**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

UNITED STATES OF AMERICA,

               Plaintiff,

   v.

MATTHEW JOHN RYAN,

               Defendant,

   v.

HURRICANE[1] HOME SOLUTIONS INC.

               Garnishee.

No. 1:23-CV-443
(FJS/CFH)

---

**APPEARANCES:**

Attorney for the
United States of America
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261
Attorney for plaintiff

Matthew John Ryan
179051-052
Brooklyn MDC
80 29th Street
Brooklyn, New York 11232
<u>Pro</u> <u>se</u> defendant

**OF COUNSEL:**

MELISSA O'BRIEN ROTHBART, ESQ.
Assistant United States Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**

---

[1] The Garnishee's business name is missing one letter in the case caption on the docket. The Clerk of the Court is respectfully ordered to correct the spelling. <u>See</u> Dkt. No. 8.

Plaintiff, the United States of America ("the Government"), applied for a Writ of Garnishment against pro se defendant, Matthew John Ryan's ("defendant") 401(k)-retirement plan and commission payments held by his former employer and garnishee, Hurricane Home Solutions, Inc. ("Hurricane Home Solutions"). See Dkt. No. 1. Defendant objects to the Government's Writ and requests a hearing. See Dkt. No. 10. The Government opposes the hearing request and argues that it is entitled to garnish defendant's 401(k) and commission. See Dkt. No. 11. For the following reasons, it is recommended that defendant's motion for a hearing be denied, defendant's objections be overruled, and the Government's Writ of Continuing Garnishment be granted to the extent outlined herein.

## I. Background

### A. Defendant's Criminal Case

On October 29, 2011, defendant pleaded guilty to one count of securities fraud. See United States v. Ryan, Case No. 1:10-CR-319 (FJS), Dkt. No. 28. District Judge Norman A. Mordue sentenced defendant to 121 months' imprisonment, followed by three years of supervised release. See id. at 2-3. Judge Mordue deferred the restitution determination until a later date. See id. at 5. On March 2, 2015, Judge Mordue entered an order of restitution for $3,797,740.30 and he entered an amended judgment reflecting that amount on April 2, 2015. See Dkt. Nos. 68, 69. Judge Mordue then entered an Amended Memorandum-Decision and Order, amending the restitution

to $3,816,031.95.  See Dkt. No. 71.  A final amended judgment was entered on January 4, 2016.  See Dkt. No. 75.

The final amended judgment ordered that restitution be paid in certain ways, depending on whether defendant was incarcerated.  See generally Dkt. No. 75. Defendant was to "pay 50% of all monthly income earned while incarcerated, from whatever source, or $25 per quarter whichever is more."  Id. at 6.  Then,

> [t]he following restitution schedule to go into effect upon defendant's release form prison: Income Range $0-$3,000 per month = 5% of monthly income payments towards restitution obligation; Income Range $3,001-$6,000 per month = 10% of monthly income towards restitution obligation; Income Range $6,001-$9,000 = 15% of monthly income payment towards restitution obligation; Income Range Greater than $9,000 per month = 20% of monthly income payment towards restitution obligation.  "Monthly income" means that part of earnings remaining after the deduction of amounts required by law to be withheld; that it shall include income from all sources, such as personal expenses paid by an[o]ther person or entity; and that defendant shall apply to his restitution obligation the entirety of any resources from any source, including inheritance, settlement, other judgment, gifts, tax refunds, lottery winnings, or gambling winnings.

Id.

While under supervised release, on March 21, 2023, a petition for warrant or summons for defendant's arrest was issued because defendant had overreported the amount of restitution he paid during certain reporting periods, underreported the amount of income he earned during certain reporting periods, failed to disclose access to a retirement account, failed to disclose a change in employment, and failed to provide requested financial documents to his probation officer.  See Dkt. No. 91 at 1-3.  District Judge Frederick J. Scullin revoked defendant's supervised release and sentenced him to four months' imprisonment followed by 30 months' supervised release.  See Text

Minute Entry 04/24/23. Judge Scullin also "directed [defendant] to pay the balance of $3,241,782.43 of restitution owed." Id.

### B. Civil Garnishment Case

The Government applied for a Writ of Garnishment on April 10, 2023, from Hurricane Home Solutions because it believed that Hurricane Home Solutions "has possession, custody, or control of substantial nonexempt property belonging to or due to Matthew John Ryan, including but not limited to nonexempt funds held in Retirement Savings Plan[.]" United States v. Ryan, Case No. 1:23-CV-443 (FJS/CFH), Dkt. No. 1 at 2. The undersigned granted the Writ on April 11, 2023. See Dkt. No. 2. Hurricane Home Solutions answered the Writ on April 21, 2023, explaining that it "had in its possession or control" $36,398.58 in defendant's 401(k) and $10,000 in commissions that Hurricane Home Solutions owed defendant. See Dkt. No. 8 at 2. On May 15, 2023, defendant requested "a hearing to justify the garnishment of such application." Dkt. No. 10. Defendant asserts that "[a] full liquidation of one's 401(k) would not hold with [Judge Mordue's restitution] order. It was derived by income produced by Ryan. If such attempt to liquidate pretax money would cause great harm to Ryan including tax issues and penalties." Id. He also states that under the Employee Retirement Income Security Act of 1974 ("ERISA") his "401(k) needs to remain intact[]" and his 401(k) contributions were approved by his probation officer. Id.

The Government responds in opposition arguing that (1) defendant is not entitled to a hearing under 28 U.S.C. § 3202(d) of the Federal Debt Collection Procedures Act ("FDCPA"); and (2) defendant's 401(k) is not exempt from garnishment. See Dkt. No. 11 at 4-12. Defendant replies, arguing that he is requesting a hearing concerning

4

garnishment of his income and 401(k) because probation consented to his 401(k) contributions, the Government failed to serve notice on the trustee of the 401(k), and a full garnishment is not in line with Judge Mordue's restitution order.  See Dkt. No. 15.  The Government filed a letter noting that defendant's reply raised two new issues related to service and garnishment of his commission that he did not raise in his initial objections.  See Dkt. No. 16.  The Government contends that even considering those new issues, the objections can be resolved without a hearing.  See id.  Defendant then submitted a letter stating, "[t]he service issues is not related to service of Ryan.  It is the lack of service to the trustee/custodian, which in fact can be addressed at this time."  Dkt. No. 18 at 1.  He then reiterates that his probation officer approved the 401(k) contributions.  See id. at 2.

## II. Analysis

28 U.S.C. § 3202 states,

(d) Hearing.--By requesting, within 20 days after receiving the notice described in section 3202(b), the court to hold a hearing, the judgment debtor may move to quash the order granting such remedy. The court that issued such order shall hold a hearing on such motion as soon as practicable, or, if so requested by the judgment debtor, within 5 days after receiving the request or as soon thereafter as possible. The issues at such hearing shall be limited—

> (1) to the probable validity of any claim of exemption by the judgment debtor;
>
> (2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted . . . .

28 U.S.C. § 3202(d).

The FDCPA states that a court "shall hold a hearing" upon a debtor's motion to quash a court's order granting a writ. 28 U.S.C. § 3202(d). Despite this language, "courts have denied a hearing where the debtor did not object based on one of the issues specified in 28 U.S.C. § 3202(d), where the objection is plainly without merit, or where the objection was simply a matter of statutory interpretation." United States v. Montijo, No. 17-CR-518 (BCM), 2021 WL 2470507, at *4 (S.D.N.Y. May 19, 2021)[2] (quoting United States v. Miller, 588 F. Supp. 2d 789, 797 (W.D. Mich. 2008)) (denying motion for hearing "[s]ince [the] defendant's claimed exemptions are inapplicable as a matter of law to the garnishment at issue here, her objections are 'plainly without merit,' making an evidentiary hearing unnecessary."); see also United States v. O'Brien, 851 F. App'x 236, 240 (2d Cir. 2021) (summary order) (affirming denial of a § 3202(d) hearing because the defendant "failed to file any substantive objections to the writ by the deadline set by the district court and because his legal challenge to the garnishment order does not require any factfinding, but rather fails on the merits[.]"); United States v. Jenkins, No. 6:15-CV-0018 (GTS/TWD), 2015 WL 5023731, at *5 (N.D.N.Y. Aug. 25, 2015) (citation omitted) ("If the judgment debtor fails to 'set forth a colorable claim' regarding one of these issues, no hearing is warranted.").

First, defendant's statements that his probation officer knew and approved of his 401(k) contributions is belied by the petition for his arrest which declares under the penalty of perjury that in December 2022, "[t]he probation officer [] observed that Ryan had a retirement account that he had failed to disclose. Ryan was contributing approximately $20,000 a year to the retirement account, while underpaying restitution

---

[2] The unpublished cases cited in this Report-Recommendation and Order have been provided to defendant, unless otherwise noted.

6

by approximately $8,000 in the 2022 calendar year." Ryan, Case No. 1:10-CR-319, Dkt. No. 91 at 1, 3, 6.  Defendant asserts under the penalty of perjury that he was "making contributions for the last three years, with the consent of the U.S. Probation Officer Supervising Ryad." Dkt. No. 15 at 4, 10.

Even if the Court accepted defendant's assertion as true, that his probation officer knew of the contributions, this does not challenge "the probable validity of any claim of exemption." 28 U.S.C. § 3202(d).  As explained below, defendant's 401(k)-account is not exempt from garnishment and his allegation that the probation officer failed to tell him otherwise does not raise a claim that merits a hearing.  See infra at 8-11; cf. O'Brien, 851 F. App'x at 238, 241 (acknowledging the defendants assertion "that, based upon his discussions with his probation officer and overpayments that he made in various months, he did not believe he was in default, and the district court never determined that he was in default[]" but concluding that his arguments were without merit and affirmed the district court's denial of a hearing); United States v. Brill, No. 99-CR-0827 (NG/CLP), 2007 WL 2274668, at *3 (E.D.N.Y. Aug. 6, 2007) (quotation marks omitted) (acknowledging the defendant's contention that his "probation officer initially advised him to pay 'what he felt he could' and that it was not until October 2002 that he was given accurate instructions as to the amounts owed[]" and "with the knowledge of his probation officer, he ceased filing monthly reports" but addressing only those arguments concerning the legal challenges to the restitution order).  Thus, defendant's objection concerning his probation officer's alleged consent to the 401(k) contributions is plainly without merit to challenge the validity of an exemption.

Second, insofar as defendant challenges the garnishment of his $10,000 commission from Hurricane Home Solutions, the Government asserts only that the argument is "easily dismissible based on long-established case law and precedent in the Second Circuit[.]" Dkt. No. 16.  Defendant's commission from employment is part of his "income" as it is falls within the definition of "earnings."  See 15 U.S.C. § 1672(a) (emphasis added) ("The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.").  Defendant's commission, as earnings, is therefore subject to the income percentage-based distribution as set forth in Judge Mordue's restitution schedule.  See Ryan, No. 1:10-CR-319, Dkt. No. 75 at 6 (defining "monthly income" as "earnings" that remain after deductions required by law).  This does not, however, raise a challenge to the probable validity of a claim of exemption and does not warrant a § 3202(d) hearing because defendant's commission is not exempt from garnishment.  See 18 U.S.C. § 3613(a)(1) (cross-referencing 26 U.S.C. § 6334(a) for list of exempt property).

Third, defendant objects to the Government's supposed failure to serve the "trustee/custodian" of his 401(k).  Dkt. No. 18.  Defendant provides no statutory, regulatory, or case law authority to support his argument.  See Dkt. Nos. 15, 18.  Although one of the grounds warranting a § 3202(d) hearing concerns "compliance with any statutory requirement for the issuance of the postjudgment remedy granted[,]" defendant's argument is meritless and does not warrant a hearing.  20 U.S.C. § 202(d)(2). The FDCPA states, "[a] copy of the notice and a copy of the application for granting a remedy . . . shall be served . . . on each person whom the United States,

8

after diligent inquiry, has reasonable cause to believe has an interest in property to which the remedy is directed." 28 U.S.C. § 3202(c).  Defendant does not explain who has an interest in his 401(k)-account other than him.  See Dkt. Nos. 10, 15, 18.  Defendant references a "trustee" and "custodian," but does not, in any of the three letters he has filed with the Court, name who that entity is.  Dkt. No. 18 at 1.  Defendant's previous employer, Home Hurricane Solutions, answered the Government's Writ attesting that it had possession or control over defendant's 401(k).  See Dkt. No. 8 at 1-2.  The Government served notice on Home Hurricane Solutions and defendant does not argue that the service was deficient.  See Dkt. Nos. 6, 7, 10, 15, 18.  As defendant does not explain who else would likely have an interest in the garnishment of his 401(k), aside from a generic reference to a "trustee" or "custodian," defendant has raised a meritless issue that does not entitle him to a hearing.  See 28 U.S.C. § 3202(c).

Fourth, defendant objects to the garnishment of his 401(k), arguing that ERISA protects it from garnishment and that if it is not exempt, garnishment should be subject to the percentages set forth in the restitution order.  See Dkt. Nos. 10, 15, 18.  ERISA "'broadly protects covered retirement benefits from dissipation through payment to third parties,' employing what is known as its 'anti-alienation' provision requiring pension plans to provide that their benefits 'may not be assigned or alienated[.]'" United States v. Shkreli, 47 F.4th 65, 71 (2d Cir. 2022) (quoting United States v. Novak, 476 F.3d 1041, 1045 (9th Cir. 2007); 9 U.S.C. § 1056(d)(1)), cert. denied sub nom. Greebel v. United States, No. 22-583, 2023 WL 3696133 (U.S. May 30, 2023).[3]  However, "[t]he

---

[3] The undersigned has not provided a copy of the one-page denial of certiorari to defendant.

9

statutory text of the MVRA[, or Mandatory Victims Restitution Act,] makes clear that criminal restitution orders can be enforced by garnishing ERISA-protected retirement funds." Id. "The MVRA expressly states that criminal restitution orders may be enforced against '*all* property or rights to property[.]'" Id. (quoting 18 U.S.C. § 3613(a)) (emphasis in original).  This is as long as there is not an "express exemption" stating otherwise.  Id.  Thus, Shkreli concluded that "ERISA's anti-alienation provision does not prohibit garnishment of funds in 401(k) accounts to satisfy restitution orders under the MVRA." Id. at 72; see also United States v. Brisson, No. 2:22-MC-84, 2022 WL 17573684, at *3 (D. Vt. Nov. 17, 2022) (citations and quotation marks omitted) ("Congress's directive providing for enforcement against all property or rights to property, notwithstanding any other federal law, makes clear that ERISA's anti-alienation provision does not prohibit garnishment of funds in 401(k) accounts to satisfy restitution orders under the MVRA.").

This conclusion is supported by the definition of "income."  The restitution order limits the amount defendant must pay to restitution from his "monthly income" on a percentage basis.  See Ryan, No 1:10-CR-319, Dkt. No. 75 at 6.  "Monthly income" is defined as the "part of earnings remaining after the deduction of amounts required by law to be withheld[.]"  Id.  The order then states that defendant "shall apply to his restitution obligation the entirety of any resource from any source, including inheritance, settlement, other judgment, gifts, tax refunds, lottery winnings, or gambling winnings." Id. (emphasis added).  The Consumer Credit Protection Act ("CCPA") limits "the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment[.]"  15 U.S.C. § 1673(a).  The CCPA "defines

'earnings' as 'compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.'" Shkreli, 47 F.4th at 76 (quoting 15 U.S.C. § 1672(a)).  The Shkreli Court "agree[d] with the decisions of our sister circuits, which reflect judicial consensus that the CCPA's garnishment cap does not apply to lump-sum distributions from contributory 401(k) accounts at issue[.]"  Id. at 77 (citing United States v. Sayyed, 862 F.3d 615, 618–19 (7th Cir. 2017); United States v. Frank, 8 F.4th 320, 325-26 (4th Cir. 2021)).  Thus, under the CCPA, and as explained by Shkreli, defendant's 401(k) is not an "earning" and is not exempt from garnishment.  See Shkreli, 47 F.4th at 76; see also Ryan, No 1:10-CR-319, Dkt. No. 75 at 6.

Next, as to the issue of how much the Government may garnish, in determining that 401(k) accounts are reachable under the MVRA, the Second Circuit clarified that "the Government, in seeking garnishment, steps into the defendant's shoes, 'acquir[ing] whatever rights the [defendant] himself possesses.'"  Shkreli, 47 F.4th at 73 (quoting United States v. Nat'l Bank of Com., 472 U.S. 713, 725 (1985)).  Thus, here, "the Government's right to [defendant's] 401(k) retirement accounts is the same as those of [defendant] himself."  Id.  Neither the Government nor defendant provided the Court with defendant's 401(k) policy and the Court cannot determine to what degree defendant would be permitted to withdraw from his 401(k)-account at this time.  See Shkreli, 47 F.4th at 74-76 (explaining that to the extent the defendant's 401(k)-account had an early withdraw tax, that tax would limit the Government's garnishment).  Thus, the undesigned cannot recommend that the Government be permitted to garnish a specific amount without further information.

11

As defendant has not raised a meritorious challenge to the validity of an exemption or to the Government's compliance with statutory requirements, it is recommended that his request for a § 3202(d) hearing be denied. It is also recommended that the Government's Writ of Continuing Garnishment be granted in part. It is recommended that should the District Judge adopt this Report-Recommendation and Order, that the parties be given twenty (20) days from the filing of a Decision and Order to file supplemental briefing concerning the extent to which defendant could withdraw from his 401(k) and the amount the Government may garnish. See Brisson, 2022 WL 17573684, at *3 (ordering supplemental briefing "to determine the extent to which Defendant has the right to withdraw a lump-sum distribution from her [] pension account without penalty or taxes").

### III.  Conclusion

**WHEREFORE**, based on the findings set forth above, it is hereby:

**RECOMMENDED**, that defendant's motion for a hearing (Dkt. No. 10) be **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's Writ of Continuing Garnishment (Dkt. No. 5) be **GRANTED IN PART**; and it is further

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, the parties be given twenty (20) days from the filing of a Decision and Order to file supplemental briefing on the issues outlined in this Report-Recommendation and Order; and it is

**ORDERED**, that the Clerk of the Court correct the spelling of Hurricane Home Solutions, Inc., on the docket; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order on all parties in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Secretary of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed R. Civ. P. 6(a), 6(e), 72.[4]

Dated: June 29, 2023
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge

---

[4] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation & Order was mailed to you to serve and file objections.  FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(C).