UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA,

                      v.                                                1:23-CV-443
                                                                             (FJS/CFH)

MATTHEW JOHN RYAN,

                                      **Defendant.**
_____

**APPEARANCES**                                         **OF COUNSEL**

**OFFICE OF THE UNITED**               **MELISSA O'BRIEN ROTHBART, AUSA**
**STATES ATTORNEY**
James Hanley U.S. Courthouse
& Federal Building
100 South Clinton Street
P.O. Box 7198
Syracuse, New York 13261-7198
Attorneys for the United States

**MATTHEW JOHN RYAN**
20 D Brookedge
Guilderland, New York 12084
Defendant *pro se*

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      The United States applied for a Writ of Garnishment against Defendant's 401(k) retirement plan and commission payments held by his former employer and garnishee, Hurricane Home Solutions, Inc. (hereinafter "HHSI"). *See* Dkt. No. 1. Defendant objected to the Government's Writ and requested a hearing. *See* Dkt. No. 10. The Government opposed Defendant's hearing request and argued that it was entitled to garnish Defendant's 401(k) and commissions. *See* Dkt. No. 11.

In a Report-Recommendation and Order, dated June 29, 2023, Magistrate Judge Hummel recommended that the Court deny Defendant's motion for a hearing, overrule Defendant's objections, grant in part the Government's Writ of Continuing Garnishment, and, if the Court adopted his Report-Recommendation and Order, the Court provide the parties twenty days from the filing of its Decision and Order to file supplemental briefing on the issues he had outlined in his Report-Recommendation and Order. *See* Dkt. No. 20 at 2, 12. Defendant filed objections to Magistrate Judge Hummel's Report-Recommendation and Order, *see* Dkt. No. 23, to which the Government responded, *see* Dkt. No. 24, and Defendant filed a reply in response to the Government's response, *see* Dkt. No. 26.

## II. BACKGROUND

On October 29, 2011, Defendant pled guilty to one count of securities fraud. *See United States v. Ryan*, 1:10-CR-319 (FJS), Dkt. No. 28. Judge Mordue sentenced Defendant to 121 months' imprisonment followed by three years of supervised release. *See id.* at 2-3. Judge Mordue deferred the restitution determination to a later date. *See id.* at 5. On March 2, 2015, Judge Mordue entered an order of restitution for $3,797,740.30 and entered an amended judgment reflecting that amount on April 2, 2015. *See id.* at Dkt. Nos. 68, 69. Judge Mordue then entered an Amended Memorandum-Decision and Order, amending the restitution to $3,816,031.95. *See id.* at Dkt. No. 71. Judge Mordue entered a final amended judgment on January 4, 2016. *See id.* at Dkt. No. 75.

The final amended judgment ordered that restitution be paid in certain ways, depending on whether Defendant was incarcerated. *See id.* at Dkt. No. 75. According to that judgment,

Defendant was to "pay 50% of all monthly income earned while incarcerated, from whatever source, or $25 per quarter whichever is more." *See id.* at Dkt. No. 75, at 6.  Then,

> [t]he following restitution schedule to go into effect upon defendant's release from prison: Income Range $0-$3,000 per month = 5% of monthly income payments towards restitution obligation; Income Range $3,001-$6,000 per month = 10% of monthly income towards restitution obligation; Income Range $6,001-$9,000 = 15% of monthly income payment towards restitution obligation; Income Range Greater than $9,000 per month = 20% of monthly income payment towards restitution obligation.  "Monthly income" means that part of earnings remaining after the deduction of amounts required by law to be withheld; that it shall include income from all sources, such as personal expenses paid by an[o]ther person or entity; and that defendant shall apply to his restitution obligation the entirety of any resources from any source, including inheritance, settlement, other judgment, gifts, tax refunds, lottery winnings, or gambling winnings.

*See id.* at Dkt. No. 75 at 6.

While Defendant was under supervised release, on March 21, 2023, the Court issued a petition for warrant or summons for Defendant's arrest because he had allegedly overreported the amount of restitution he had paid during certain reporting periods, underreported the amount of income he had earned during certain reporting periods, failed to disclose access to a retirement account, failed to disclose a change in employment, and failed to provide requested financial documents to his probation officer.  *See id.* at Dkt. No. 91 at 1-3.  The Court revoked Defendant's supervised release and sentenced him to four months' imprisonment followed by 30 months' supervised release.  *See id.* at Dkt. No. 99, Judgment of Revocation.  The Court also directed Defendant to pay the balance of $3,241,782.43 of restitution owed in accordance with the schedule of payments.  *See id.* at Dkt. No. 99.

On April 10, 2023, the Government applied for a Writ of Garnishment from HHSI because it believed that HHSI had "possession, custody, or control of substantial nonexempt

property belonging to or due to [Defendant], including but not limited to nonexempt funds held in Retirement Savings Plan[.]" *See United States v. Ryan*, No. 1:23-CV-443 (FJS/CFH), Dkt. No. 1 at 2.  Magistrate Judge Hummel granted the Writ on April 11, 2023.  *See id.* at Dkt. No. 2. HHSI answered the Writ on April 21, 2023, explaining that it "had in its possession or control" $36,398.58 in [D]efendant's 401(k) and $10,000 in commissions that HHSI owed Defendant. *See id.*, Dkt. No. 8 at 2.

On May 15, 2023, Defendant requested "a hearing to justify the garnishment of such application." *See id.* at Dkt. No. 10.  In support of his request, Defendant argued that "[a] full liquidation of one's 401(k) would not hold with [Judge Mordue's restitution] order.  It was derived by income produced by Ryan.  If such attempt to liquidate pretax money would cause great harm to Ryan including tax issues and penalties." *See id.*  Defendant also stated that, under the Employee Retirement Income Security Act of 1974 ("ERISA"), his "401(k) needs to remain intact[]" and that his probation officer had approved his 401(k) contributions.  *See id.*

In opposition, the Government argued that (1) Defendant was not entitled to a hearing under 28 U.S.C. § 3202(d) of the Federal Debt Collection Procedures Act ("FDCPA") and (2) Defendant's 401(k) was not exempt from garnishment.  *See* Dkt. No. 11 at 4-12.  In his reply, Defendant responded that he was requesting a hearing concerning garnishment of his income and 401(k) because his Probation Officer had consented to his 401(k) contributions, the Government had failed to serve notice on the trustee of the 401(k), and a full garnishment was not in line with Judge Mordue's restitution order.  *See* Dkt. No. 15.

## III. DISCUSSION

A.     **Magistrate Judge Hummel's Report-Recommendation and Order**

*1. Defendant's entitlement to a hearing*

Magistrate Judge Hummel began by noting that 28 U.S.C. § 3202(d) provides as follows:

> (d) Hearing. – By requesting, within 20 days after receiving the notice described in section 3202(b), the court to hold a hearing, the judgment debtor may move to quash the order granting such remedy. The court that issued such order shall hold a hearing on such motion as soon as practicable, or, if so requested by the judgment debtor, within 5 days after receiving the request or as soon thereafter as possible. The issues at such hearing shall be limited –
>
> (1) to the probable validity of any claim of exemption by the judgment debtor;
>
> (2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted . . . .

28 U.S.C. § 3202(d).

Magistrate Judge Hummel noted that, despite the fact that the FDCPA provides that a court "shall hold a hearing" upon a debtor's motion to quash a court's order granting a writ, "'courts have denied a hearing where the debtor did not object based on one of the issues specified in 28 U.S.C. § 3202(d), where the objection is plainly without merit, or where the objection was simply a matter of statutory interpretation.'" *See* Dkt. No. 20 at 6 (quoting *United States v. Montijo*, No. 17-CR-518 (BCM), 2021 WL 2470507, at *4 (S.D.N.Y. May 19, 2021) (quoting *United States v. Miller*, 588 F. Supp. 2d 789, 797 (W.D. Mich. 2008) (denying motion for hearing "[s]ince [the] defendant's claimed exemptions are inapplicable as a matter of law to the garnishment at issue here, her objections are 'plainly without merit,' making an evidentiary hearing unnecessary"); *see also United States v. O'Brien*, 851 F. App'x 236, 240 (2d Cir. 2021)

(summary order) (affirming denial of a § 3202(d) hearing because the defendant "failed to file any substantive objections to the writ by the deadline set by the district court and because his legal challenge to the garnishment order does not require any factfinding, but rather fails on the merits)"; *United States v. Jenkins*, No. 6:15-CV-0018 (GTS/TWD), 2015 WL 5023731, at *5 (N.D.N.Y. Aug. 25, 2015) (citation omitted) ("If the judgment debtor fails to 'set forth a colorable claim' regarding one of these issues, no hearing is warranted.")).

Magistrate Judge Hummel concluded that "[D]efendant's statements that his probation officer knew and approved of his 401(k) contributions [was] belied by the petition for his arrest which declare[d] under the penalty of perjury that in December 2022, '[t]he probation officer [] observed that Ryan had a retirement account that he had failed to disclose. Ryan was contributing approximately $20,000 a year to the retirement account, while underpaying restitution by approximately $8,000 in the 2022 calendar year.'" *See id.* at 7 (quoting *Ryan,* Case No. 1:10-CR-319, Dkt. No. 91 at 1, 3, 6). Defendant asserted under penalty of perjury that he was "'making contributions for the last three years, with the consent of the U.S. Probation Officer Supervising Ryad.'" *See id.* (quoting Dkt. No. 15 at 4, 10).

Magistrate Judge Hummel found that, "[e]ven if the Court accepted [D]efendant's assertion as true, that his probation officer knew of the contributions, this does not challenge 'the probable validity of any claim of exemption.'" *See id.* (quoting 28 U.S.C. § 3202(d)). Furthermore, Magistrate Judge Hummel found that "[D]efendant's 401(k)-account [was] not exempt from garnishment and his allegation that the probation officer failed to tell him otherwise [did] not raise a claim that merit[ed] a hearing." *See id.* (*cf. O'Brien*, 851 F. App'x at 238, 241 (acknowledging the defendant's assertion "that, based upon his discussions with his probation officer and overpayments that he made in various months, he did not believe he was in

default, and the district court never determined that he was in default[]" but concluding that his arguments were without merit and affirmed the district court's denial of a hearing); *United States v. Brill*, No. 99-CR-0827 (NG/CLP), 2007 WL 2274668, a t *3 (E.D.N.Y. Aug. 6, 2007) (quotation marks omitted) (acknowledging the defendant's contention that his "probation officer initially advised him to pay 'what he felt he could' and that it was not until October 2002 that he was given accurate instructions as to the amounts owed[]" and "with the knowledge of his probation officer, he ceased filing monthly reports" but addressing only those arguments concerning the legal challenges to the restitution order)).  Based on this case law, Magistrate Judge Hummel concluded that Defendant's "objection concerning his probation officer's alleged consent to the 401(k) contributions [was] plainly without merit to challenge the validity of the exemption."  *See id.*

To the extent that Defendant challenges Magistrate Judge Hummel's decision to deny his motion for a hearing, that challenge is clearly without merit.  Therefore, the Court denies Defendant's appeal of that decision.

### 2. *Defendant's commissions*

Magistrate Judge Hummel found that "Defendant's commission from employment is part of his 'income' as it falls within the definition of 'earnings.'"  *See id.* at 8 (citing 15 U.S.C. § 1672(a) (emphasis added) ("The term 'earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.")).  Therefore, Magistrate Judge Hummel concluded that "Defendant's commission, as earnings, [was] therefore subject to the income percentage-based distribution as set forth in Judge Mordue's restitution

the net amount that HHSI must pay to Defendant.[1]  Therefore, the Court directs the Government to obtain that information from HHSI, have an officer of HHSI confirm that information in an affidavit, and file such affidavit with the Court, and serve the same on Defendant, within twenty days of the date of this Memorandum-Decision and Order.

### 3. Defendant's 401(k) plan

Magistrate Judge Hummel noted that Defendant objected to the garnishment of his 401(k) based on his argument "that ERISA protects it from garnishment and that, if it is not exempt, garnishment should be subject to the percentages set forth in the restitution order."  See Dkt. No. 20 (citing Dkt. Nos. 10, 15, 18).  Magistrate Judge Hummel explained that ERISA "'"broadly protects covered retirement benefits from dissipation through payment to third parties," employing what is known as its "anti-alienation" provision requiring pension plans to provide that their benefits "may not be assigned or alienated[.]"'"  See id. (quoting United States v. Shkreli, 47 F.4th 65, 71 (2d Cir. 2022) (quoting United States v. Novak, 476 F.3d 1041, 1045 (9th Cir. 2007); 9 U.S.C. § 1056(d)(1)), cert. denied sub nom. Greebel v. United States, No. 22-583, 2023 WL 3696133 (U.S. May 30, 2023)) (footnote omitted).  However, "'[t]he statutory text of the MVRA[, or Mandatory Victims Restitution Act,] makes clear that criminal restitution orders can be enforced by garnishing ERISA-protected retirement funds.'"  See id. at 9-10 (quotation omitted).  Furthermore, "'[t]he MVRA expressly states that criminal restitution orders may be enforced against "all property or rights to property[.]"'"  See id. at 10 (quoting [Shkreli, 47 F.4th at 71] (quoting 18 U.S.C. § 3613(a))).  Therefore, "Shkreli concluded that 'ERISA's anti-

---

[1] The Court has conferred with the Probation Office and has determined that Defendant is current with his restitution payments, has corrected all of the arrears in such payments, and has stipulated to voluntary assignment of earnings.

alienation provision does not prohibit garnishment of funds in 401(k) accounts to satisfy restitution orders under the MVRA.'" *See id.* (quoting [*Shkreli*, 47 F.4th] at 72; *see also United States v. Brisson*, No. 2:22-MC-84, 2022 WL 17573684, at *3 (D. Vt. Nov. 17, 2022) (citations and quotation marks omitted) ("Congress's directive providing for enforcement against all property or rights to property, notwithstanding any other federal law, makes clear that ERISA's anti-alienation provision does not prohibit garnishment of funds in 401(k) accounts to satisfy restitution orders under the MVRA.")).

Magistrate Hummel explained that "[t]his conclusion is supported by the definition of 'income.'" *See id.* He noted that "[t]he restitution order limits the amount [D]efendant must pay to restitution from his 'monthly income' on a percentage basis." *See id.* (citing *Ryan,* No. 1:10-CR-319, Dkt. No. 75 at 6). Furthermore, "'[m]onthly income' is defined as the 'part of earnings remaining after the deduction of amounts required by law to be withheld[.]'" *See id.* (quoting [*Ryan*, No. 1:10-CR-319, Dkt. No. 75 at 6]). The restitution order then provides that Defendant "'shall apply to his restitution obligation the entirety of any resource from any source, including inheritance, settlement, other judgment, gifts, tax refunds, lottery winnings, or gambling winnings.'" *See id.* (quotation omitted) (emphasis added). Magistrate Judge Hummel then noted that "[t]he Consumer Credit Protection Act ("CCPA") limits 'the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment[.]'" *See id.* (quoting 15 U.S.C. § 1673(a)). The CCPA "'defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program."'" *See id.* at 10-11 (quoting *Shkreli*, 47 F.4th at 76 (quoting 15 U.S.C. § 1672(a))).

Magistrate Judge Hummel stated that "[t]he *Shkreli* Court 'agree[d] with the decisions of our sister circuits, which reflect judicial consensus that the CCPA's garnishment cap does not apply to lump-sum distributions from contributory 401(k) accounts at issue[.]'" *See id.* at 11 (quoting [*Shkreli*, 47 F.4th] at 77 (citing *United States v. Sayyed*, 862 F.3d 615, 618-19 (7th Cir. 2017); *United States v. Frank*, 8 F.4th 320, 325-26 (4th Cir. 2021))). Thus Magistrate Judge Hummel concluded that, "under the CCPA, and as explained by *Shkreli*, [D]efendant's 401(k) is not an 'earning' and is not exempt from garnishment." *See id.* (citing *Shkreli*, 47 F.4th at 76; *see also Ryan*, 1:10-CR-319, Dkt. No. 75 at 6).

Next, Magistrate Judge Hummel explained that, "as to the issue of how much the Government may garnish, in determining that 401(k) accounts reachable under the MVRA, the Second Circuit clarified that 'the Government, in seeking garnishment, steps into the defendant's shoes, "acquir[ing] whatever rights the [defendant] himself possesses."'" *See id.* (quoting *Shkreli*, 47 F.4th at 73) (quoting *United States v. Nat'l Bank of Com.*, 472 U.S. 713, 725 (1985))). Thus, in this case, "'the Government's right to [defendant's] 401(k) retirement accounts is the same as "those of [defendant] himself.'" *See id.* (quoting [*Shkreli*, 47 F.3d at 73]). Magistrate Judge Hummel noted that "[n]either the Government nor [D]efendant provided the Court with [D]efendant's 401(k) policy and the Court cannot determine to what degree [D]efendant would be permitted to withdraw from his 401(k)-account at this time. *See id.* (citing *Shkreli*, 47 F.4th at 74-76 (explaining that to the extent the defendant's 401(k)-account had an early withdrawal tax, that tax would limit the Government's garnishment)). Thus, Magistrate Judge Hummel concluded that he could not "recommend that the Government be permitted to garnish a specific amount without further information." *See id.*

In conclusion, Magistrate Judge Hummel recommended that, if this Court "adopt[ed [his] Report-Recommendation and Order, . . . the parties be given twenty (20) days from the filing of a Decision and Order to file supplemental briefing concerning the extent to which [D]efendant could withdraw from his 401(k) and the amount the Government may garnish." *See id.* at 12 (citing *Brisson*, 2022 WL 17573684, at *3 (ordering supplemental briefing "to determine the extent to which Defendant has the right to withdraw a lump-sum distribution from her [] pension account without penalty or taxes")).

Defendant objects to the garnishment of his 401(k) plan because he "was granted permission to provide deductions from his pay/income to his 401(k) probation officer/Government." *See* Dkt. No. 23 at 2-3. Furthermore, he states that "[t]he government had such knowledge of [his] contributions to this 401(k) . . . [y]et never objected nor denied [his] deductions." *See id.* at 3.

Furthermore, Defendant argues that, because he is under the age of 59 1/2, a withdrawal from his 401(k) would have a 10% penalty for early withdrawal, then he would have to pay both federal and New York state tax at a higher rate, based on the withdrawal and his current and future income for 2023. *See id.* He asserts that "this includes the IRS consideration of such withdrawal as taxable income and applied to the . . . tax of 3.8%. This will create a larger tax debt. Such withdrawal of the 401(k) funds will be a loss of over 50% in taxes and penalties." *See id.* at 5.

The Government, in response to Defendant's objections, states that Defendant's argument that his alleged discussion with one of his probation officers regarding contributions to his 401(k) retirement account somehow makes the account exempt from garnishment, "is in direct opposition to the supervised release violations for which the defendant pled guilty to merely

months ago." *See id.* at 5 n.3 (*compare* Civil Docket, Dkt. Nos. 10, 20, 23 *with* Criminal Docket, Dkt. No. 99). Furthermore, the Government points to the fact that Defendant "did indeed fail to disclose this 401(k) retirement account; as set forth in the Petition for Warrant or Summons for Offender Under Supervision (outlining four violations which the defendant ultimately pled guilty to in their entirety), for the entire year of 2022, the defendant 'failed to disclose access to financial accounts, specifically a retirement account through his employer' and 'failed to disclose a retirement account that he controlled' in the net worth section of his financial disclosures." *See id.* (quoting Criminal Docket, Dkt. Nos. 91 at 1 and 2, 99 at 1). Finally, the Government states that, even if Defendant had disclosed his 401(k) retirement account, "disclosure of a financial account does not absolve the defendant of his Court-ordered responsibility to pay the victims of his crimes." *See id.*

Furthermore, the Government contends that Defendant "is obligated to pay restitution based on the terms of the restitution judgment . . . [and] [a]s set forth in the defendant's criminal judgment, [he] shall apply to his restitution obligation *the entirety* of any resource from any source, including inheritance, settlement, other judgment, gifts, tax refunds, lottery winnings, or gambling winnings.'" *See* Dkt. No. 24 at 5 (quoting Criminal Docket, Dkt. No. 75 at 6 (emphasis added)). The Government argues that, as set forth in Magistrate Judge Hummel's Report-Recommendation and Order, "Defendant's 401(k) retirement account falls outside of the [D]efendant's 'monthly income,' and therefore should be considered another source from which restitution can be satisfied (at a rate of 100%)." *See id.* at 5-6 (citing *United States v. O'Brien*, 851 Fed. Appx. 236, 240 (2d Cir. 2021); *United States v. Jaffe*, 417 F.3d 259, 265 (2d Cir. 2005); *United States v. Shkreli*, ___ F.4th ___, 2022 WL 3640279, at *1 (2d Cir. Aug. 24, 2022), *petition for certiorari denied* (all holding that 18 U.S.C. 3613 expressly authorizes the garnishment of

retirement funds to satisfy criminal judgments notwithstanding anti-alienation provisions in other federal laws)).

The Government, in response to Magistrate Judge Hummel's reference to supplemental briefing regarding the extent to which Defendant could withdraw from his 401(k) retirement account and the amount the Government could garnish, submitted a document entitled "Automatic Data Processing Defined Contribution Plan," which it indicated was Defendant's 401(k) Plan. Specifically, the Government pointed to a section of that plan, which provides, as follows:

> (d) **Distribution at any time.** A Participant may elect at any time to withdraw after-tax voluntary Employee contributions from such Participant's Voluntary Contributions Account and the actual earnings thereon in a manner which is consistent with and satisfies the provisions of Section 6.5, including, but not limited to, all notice and consent requirements of Code §§ 411(a)(11) and 417 and the Regulations thereunder. If the Administrator maintains sub-accounts with respect to after-tax voluntary Employee contributions (and earnings thereon) which were made on or before a specified date, a Participant shall be permitted to designate which sub-account shall be the source for the withdrawal. Forfeitures of Employer contributions shall not occur solely as a result of an Employee's withdrawal of after-tax voluntary Employee contributions.

*See id.* at 10 (quoting Exhibit B, Automatic Data Processing Defined Contribution Plan, at 35).

In addition, the Government notes that Defendant's argument referencing early withdrawal penalties does not apply to this case. *See id.* The Government asserts that, in *United States v. Shkreli*, the court noted that "under the Mandatory Victims Restitution Act ("MVRA"), 'restitution orders are enforced in the same manner as tax levies.'" *See id.* (quoting [*Shkreli*,] 47 F.4th at 72); *see also United States v. Irving*, 452 F.3d 110, 126 (2d Cir. 2006) (18 U.S.C. § 3613(c) "demands that criminal fines in favor of the United States should be enforced in the same manner as a tax liability would be enforced.")). The Government claims that "[t]he

interplay between tax levies and criminal restitution judgments, and the associated collection methods applicable to both, is instructive for this issue." *See id.* According to the Government, "[p]ursuant to Section 72(t) of the Internal Revenue Code, the 10% additional tax on early distributions from qualified retirement plans does not apply to distributions which are made on account of a levy pursuant to Section 6331 of the Internal Revenue Code on qualified retirement plans." *See id.* at 10-11 (citing 26 U.S.C. § 72(t)). In fact, the Government asserts that "the Tax Court has held that where the government is seeking to collect a debt owed to it, the 10% penalty tax for early withdrawal does not apply." *See id.* at 11 (citing *Murillo v. Comm'r*, 75 T.D.M. (CCH) 1564 (T.C. 1998), *acq. in result*, 1999-1 C.B., at xix). Furthermore, the Government notes that "[t]he collection of criminal fines or restitution payments pursuant to 18 U.S.C. § 3613 is a government action." *See id.* (citing I.R.C. P.L.R. 200426027 (June 25, 2004)). Therefore, according to the Government, "any distributions that result from the collection of criminal restitution, such as in the instant case, are not subject to the additional 10% penalty tax." *See id.* (citing I.R.C. P.L.R. 200426027 (June 25, 2004)]; 26 U.S.C. § 72(t); *United States v. Novak*, 476 F.3d 1041 (9th Cir. 2006) (involuntary court-ordered distributions from retirement accounts to pay criminal restitution are not subject to additional tax or penalty for early withdrawal)).[2]

---

[2] In a caveat, the Government states that, "[c]oncerning any income tax that may be chargeable to Defendant in relation to the turnover of the funds, the United States Attorney's Office neither represents the IRS, nor alleges any tax advice in this matter, and nothing in this case shall limit, waive, or release any administrative or judicial civil claim, demand, or cause of action whatsoever, of the United States or its agencies." *See* Dkt. No. 24 at 11. However, the Government notes that, although it "cannot advise as to Defendant's personal income tax liability, the Order entered by this Court directing the turnover of the funds can specify that the full amount of the account should be turned over, less any deductions required by law (which should address any income tax withholdings), with no additional tax or penalty for early withdrawal of those funds." *See id.*

Finally, the Government argues that it is "permitted to step into the shoes of [D]efendant and withdraw the entirety of his 401(k) retirement account to apply towards his outstanding restitution obligation, as permitted under the terms of his 401(k) retirement account and case law. Moreover, contrary to Defendant's assertion, involuntary court-ordered distributions from retirement accounts to pay criminal restitution are not subject to additional tax or penalty for early withdrawal." *See id.* at 11-12.  Therefore, the Government argues that it "is entitled to withdraw the entirety of [D]efendant's 401(k) retirement account, subject only to the tax implications referenced above." *See id.* at 12.

In response, Defendant states that he will be 59 1/2 in May 2024.  *See* Dkt. No. 26 at 7. Defendant further requests that there be an agreed-upon amount of monthly income from his 401(k) with said garnishment applied based on the percentage in the court order of restitution. *See id.*  He further contends that the Government would receive a larger payment then having the disbursement of the 401(k) prior to his turning 59 1/2 and having fees and fines applied.  *See id.* at 7-8.

In addition, Defendant argues that the document that the Government provided to the Court and to him is just a format of a 401(k) plan from an app, not the actual plan specifics as the defined benefit plan for HHSI.  *See id.* at 10.  According to Defendant, the document does not cover the specifics of the HHSI plan, including parts of the plan which HHSI did not follow or apply.  *See id.*  Therefore, Defendant argues that the Government's Exhibit B was a waste of paper, the Court's time and does not meet Magistrate Judge Hummel's request for a plan specific of HHSI's 401(k), which would help the Court make its decision.  *See id.* at 10-11.

Finally, Defendant argues that early withdrawals from his 401(k) retirement fund will have early withdrawal costs/fees if he withdraws those funds prior to reaching the age of 59 1/2 ;and, therefore, the Government should delay until that time. *See id.* at 12.

The Court has reviewed the document that the Government attached as Exhibit B to its memorandum of law in response to Defendant's objections to Magistrate Judge Hummel's Report and Recommendation. *See* Dkt. No. 24-2 (Exhibit B: Automatic Data Processing Defined Contribution Plan). The Government points specifically to paragraph (d), which appears on page 35 of that document.[3] The Government relies on this section of the Plan to support its position that it can garnish all of the funds in Defendant's 401(k) Plan. However, according to this section, although "[a] participant may elect **at any time** to withdraw **after-tax voluntary Employee contributions from such Participant's Voluntary Contribution Account and the actual earnings thereon**," it does not say anything about the withdrawal of any pre-tax voluntary Employee contributions or any employer contributions and any earnings on those two types of contributions if, in fact, those types of contributions are allowed under Defendant's 401(k) Plan. *See* Dkt. 24-2 at 35 (emphasis added).

In addition, at Section 6.4 of the Plan, which would appear to apply to Defendant because he is no longer an employee of HHSI, provides as follows:

> **6.4 Determination of Benefits upon Termination**
> (a) **Payment on severance of employment.** If a Participant's employment with he Employer and any Affiliated Employer is severed for any reason other than death, Total and Permanent Disability, or attainment of Participant's Retirement Date, then such Participant shall be entitled to such benefits as provided herein.

---

[3] References to page numbers in Dkt. No. 24-2 are to the page numbers at the bottom of each page of that document, not to the CM/ECF generated page numbers.

> Distribution of the funds due to a Terminated Participant shall be made on the occurrence of an event which would result in the distribution had the Terminated Participant remained in the employee of the Employer (upon the Participant's death, Total and Permanent Disability, Early or Normal Retirement). However, at the election of the Participant, the Administrator shall direct that the entire Vested portion of the Terminated Participant's Combined Account be payable to such Terminated Participant provided the conditions, if any, set forth in the Adoption Agreement have been satisfied. Any distribution under this paragraph shall be made in a manner which is consistent with and satisfied the provisions of Section 6.5, including, but not limited to, all notice and consent requirements of Code §§ 411(a)(11) and 417 and the Regulations thereunder.

*See* Dkt. No. 24-2 at 40.

In addition, Article XIII Simple 401(k) Provisions, provides certain requirements for such plans. *See* Dkt. No. 24-2 at 87-89. Both parties refer to Defendant's retirement account as a 401(k). Thus, Article XIII may affect the rights to withdrawal that Defendant has under his specific plan and, in addition, this Article appears to contemplate Employer contributions.

In sum, the Court cannot determine, based on the document that the Government submitted, whether this document governs Defendant's 401(k), and, if it does, which sections of this document apply to Defendant's 401(k). Although the Court finds that Defendant's 401(k) is subject to garnishment, the Government is required to show what portion of Defendant's 401(k) it can garnish when it steps into Defendant's shoes. It may very well be, as the Government argues, that, under the terms of this Plan that apply to Defendant's 401(k), it can garnish the entire amount and apply that amount to Defendant's restitution obligation. However, based on the information that is currently before it, the Court cannot determine if that is the case. Therefore, the Court directs the Government to provide an affidavit from an individual who is responsible for administering the Plan, as it applies to Defendant, setting forth the following information: (1) those specific sections of the Plan Document that apply to Defendant's 401(k),

(2) the total amount of funds in Defendant's 401(k); (3) what portion of those funds constitutes his after-tax contributions and the earnings on those after-tax contributions; (4) what portion of those funds constitutes his pre-tax contributions, if any, and the earnings on those pre-tax contributions; (5) what portion of those funds constitute employer contributions, if any, and the earnings on those contributions; (6) what portion of those funds Defendant can withdraw at this time; (7) what, if any, would be the potential tax consequences of Defendant withdrawing the funds from his 401(k) prior to reaching the age of 59 1/2; and (8) any other information that the administrator believes would be useful to the Court in understanding the specific terms and conditions of Defendant's 401(k).

### III. CONCLUSION

Accordingly, having reviewed the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court herby

**ORDERS** that Magistrate Judge Hummel's Report-Recommendation and Order is **ADOPTED** insofar as he denied Defendant's motion for a hearing and granted the Government's Writ of Continuing Garnishment in part; and the Court further

**ORDERS** that, with regard to the commissions that HHSI owes to Defendant, the Court directs the United States to inquire of HHSI what part of the $10,000 in commissions it is holding is due and owing to Defendant, *i.e.,* whether HHSI would have to deduct any funds from that amount due to cancellation of jobs; and file an affidavit from an individual at HHSI who has the authority to make that determination, and also indicate the amount that Defendant would receive after the deductions required by law.  The Government is to file that information with the

Court, and serve the same on Defendant, within 20 days of the date of this Memorandum-Decision and Order;[4] and the Court further

**ORDERS** that, with regard to Defendant's 401(k), the Government shall file and serve an affidavit of the administrator of Defendant's 401(k) setting forth the information that the Court has set forth above within 20 days of the date of this Memorandum-Decision and Oder; and the Court further

**ORDERS** that Defendant shall have 20 days from the date that the Government files and serves the affidavit of an HSSI employee regarding his commissions and the affidavit of the administrator of his 401(k) to respond to those affidavits.

**IT IS SO ORDERED.**

Dated: February 14, 2024
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Judge

---

[4] Once the Court has that information, it will be able to determine what portion of the amount due to Defendant is subject to the Government's writ of garnishment.